IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| **FIDELITY & GUARANTY INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) | No.: 3:02-CV-137 (VARLAN/GUYTON) |
| **SOUTHERN MECHANICAL SERVICE CORPORATION, SHAREN L. DEBUSK, and DAVID DEBUSK,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Introduction

Plaintiff, Fidelity & Guaranty Insurance Company ("FGIC"), seeks recovery against defendant David DeBusk for losses sustained by FGIC by way of bonds issued to Southern Mechanical Service Corporation ("Southern Mechanical") pursuant to a General Agreement of Indemnity ("Indemnity Agreement") allegedly executed by or on behalf of all three defendants.[1] FGIC specifically seeks to recover funds totaling $395,693.70, which it paid to claimants while acting as surety for Southern Mechanical on bonds issued in connection with construction contracts.[2] FGIC also seeks to recover attorney's fees and litigation expenses.

---

[1] Default judgments were entered against the other two defendants, Southern Mechanical and Sharen L. DeBusk, pursuant to Fed. R. Civ. P. 55 [*see* Docs. 11, 22, 28].

[2] According to the pretrial order [Doc. 40], FGIC actually made payments totaling $443,742.61 but was able to recover contract balances due Southern Mechanical in the amount of $48,048.91, leaving a net loss of $395,693.70.

This action was tried without a jury on December 15, 2004. The parties have filed proposed findings of fact and conclusions of law [Docs. 34 and 37], as well as supplemental proposed findings of fact and conclusions of law [Docs. 45 and 46] following the trial. The following comprises the Court's findings of fact and conclusions of law filed pursuant to Fed. R. Civ. P. 52(a).

**Findings of Fact[3]**

Southern Mechanical was a construction business owned and operated by the DeBusk family. Charles DeBusk, Sr., who is now deceased, primarily directed the business and made all of the business decisions. Charles DeBusk held and used a general contractor's license for the business. His son David DeBusk ("DeBusk") worked as a service technician for Southern Mechanical and would help out in the field as directed by his father. DeBusk also holds a general contractor's license which he used to perform construction jobs for the business. DeBusk was an officer of and had an ownership interest in Southern Mechanical. Sharen DeBusk, the wife of David, was also an officer of Southern Mechanical.

On September 6, 1999, the Indemnity Agreement at issue was executed providing Southern Mechanical with bonds to perform work on various construction projects [*see* Ex. 1 to Doc. 44]. The agreement, which includes an indemnity clause and a provision for attorney's fees, follows in pertinent part:

---

[3] Some of the facts have been stipulated by the parties and will be considered accordingly.

2

6. The Undersigned will indemnify [FGIC] and hold it harmless from and against all liability, losses, costs, damages, attorneys' fees, disbursements and expenses of every nature which [FGIC] may sustain or incur by reason of, or relating to, having executed or procured the execution of any such BOND, or that may be sustained or incurred by reason of making any investigation of any matter, or prosecuting or defending any action in connection with any such BOND, or recovering any salvage or enforcing any provision of this Agreement. The Undersigned shall pay to [FGIC] all money which [FGIC] or its representatives may pay or cause to be paid and shall pay to [FGIC] such sum as may be necessary to exonerate and hold it harmless with respect to any liability which may be asserted against [FGIC] as soon as liability exists or is asserted against [FGIC], whether or not [FGIC] shall have made any payment therefor. In the event of any payment by [FGIC], the Undersigned further agree that in any accounting between [FGIC] and the Undersigned, [FGIC] shall be entitled to charge for any and all disbursements made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity, or expediency existed....

\*\*\*

14. In any action, suit or proceeding brought by [FGIC] to enforce any of the covenants of this Agreement, [FGIC] shall be entitled to receive from the Undersigned the costs and expenses, including attorneys' fees, incurred by [FGIC] in connection therewith, and such costs and expenses may be included in any judgment or decree rendered against the Undersigned....

[*id.*].

The Indemnity Agreement is a typed document and reflects the handwritten signatures of three individuals, Freddie G. Kinzalow, Sharen DeBusk, and David DeBusk. The fifth of seven pages of the agreement reads:

GENERAL AGREEMENT OF INDEMNITY
Signature Page

THIS PAGE IS ATTACHED TO, AND FORMS PART OF, THE GENERAL AGREEMENT OF INDEMNITY DATED September 3rd, 1999.[4]

ATTEST(S):  CORPORATE INDEMNITOR(S):

Southern Mechanical Service Corporation
(Company Name)

By: s/ Freddie Kinzalow            By: s/ Sharen DeBusk     (SEAL)
    (Signature)                        (Signature)

Freddie G. Kinzalow, SECRETARY      Sharen L. DeBusk, PRESIDENT
(Print or Type Name and Title)      (Print or Type Name and Title)

                                    Address: 1549 E. Union Valley Road
                                             Seymour, TN 37865
                                    Tax I.D.: *redacted by the Court*

---

[4] The date of September 3, 1999 was handwritten throughout the agreement.

3

[*id.*]. The sixth of seven pages reads in pertinent part:

GENERAL AGREEMENT OF INDEMNITY
RESOLUTION AND CERTIFICATION

WHEREAS, the President and Secretary of Southern Mechanical Service Corporation, have executed a certain GENERAL AGREEMENT OF INDEMNITY ... having been read at a meeting on the 3rd day of September, 1999, and fully considered and approved by the directors present; and

WHEREAS, the said GENERAL AGREEMENT OF INDEMNITY has been accepted by SURETY upon the warranty of the said officers that this Corporation had and continues to have such an interest in said suretyship as to empower it to make said GENERAL AGREEMENT OF INDEMNITY.

NOW, THEREFORE, BE IT RESOLVED that the said officers of this Corporation were authorized as of the 3rd day of September, 1999, and continue to be authorized, to execute on behalf of this Corporation the said GENERAL AGREEMENT OF INDEMNITY, and that the acts of said officers of this Corporation who have already executed said GENERAL AGREEMENT OF INDEMNITY are hereby unanimously ratified and confirmed as the acts of this Corporation.

...

I hereby certify that I am Secretary of Southern Mechanical Service Corporation that the above Resolution is a true and accurate copy of a resolution unanimously adopted by the Board of Directors at a meeting duly called and held on the 3rd day of September, 1999, in the office of the said Corporation, at meeting a quorum of the Directors was present.
    which

IN WITNESS WHEREOF I have hereunto set my hand this 3rd day of September, 1999.

            s/ Freddie Kinzalow    (SEAL)
            (Signature)

            Freddie G. Kinzalow, SECRETARY
            (Print or Type Name and Title)

[*id.*]. The final seventh page reads:

GENERAL AGREEMENT OF INDEMNITY
Signature Page

THIS PAGE IS ATTACHED TO, AND FORMS PART OF, THE GENERAL AGREEMENT OF INDEMNITY DATED September 3rd, 1999.

WITNESS(ES):                                        INDIVIDUAL INDEMNITOR(S):

By:    s/ Lynn Hedrick                 By:    s/ Sharen DeBusk    (SEAL)
        (Signature)                                              (Signature)

        _____                          Sharen L. DeBusk
        (Print or Type Name)                           (Print or Type Name)

Address: P.O. Box. 604                   Address: 1549 E. Union Valley Road
             Seymour, TN 37865                          Seymour, TN 37865
                                                          Social Security No.: *redacted by the Court*

| | |
|---|---|
| By: s/ Lynn Hedrick<br>(Signature) | By: s/ David DeBusk  (SEAL)<br>(Signature) |
| _____<br>(Print or Type Name) | David DeBusk_____<br>(Print or Type Name) |
| Address: P.O. Box. 604<br>        Seymour, TN 37865 | Address: 1549 E. Union Valley Road<br>        Seymour, TN 37865<br>Social Security No.: *redacted by the Court* |

[*id.*].

Lynn Hedrick, an insurance agent who owns Allied Insurers in Seymour, Tennessee, testified first. Hedrick has worked as both broker and agent in the insurance business for twenty-five years. During that time, he has assisted contractors obtain bonding on over fifty occasions. Hedrick explained that the process for obtaining bonding involves gathering personal and company financial information, providing cost estimates for the particular projects, and signing an indemnity agreement. According to Hedrick, execution of an indemnity agreement by both the company and the owners prior to issuance of bonding is a universal practice in the surety industry. Without bonding, Hedrick testified, contractors have a restricted ability to secure construction jobs, as bond lines are required by many employers.

According to Hedrick's testimony, David and Sharen DeBusk sought his assistance to obtain bonding for Southern Mechanical's construction work. In doing so, the DeBusks met with representatives of St. Paul Companies ("St. Paul"), of which FGIC is a subsidiary, on several occasions in Hedrick's office. St. Paul agreed to provide the DeBusks bonding through FGIC, on the condition that Southern Mechanical and Mr. and Mrs. DeBusk individually sign an Indemnity Agreement for issuance of the bonds. Hedrick testified that

5

St. Paul would not have agreed to provide bonding had the DeBusks refused to sign an Indemnity Agreement.

Hedrick testified that David and Sharen DeBusk came to his office on September 3, 1999 to execute the Indemnity Agreement at issue. As he does with all clients, Hedrick explained to the DeBusks that St. Paul required execution of the Indemnity Agreement before it issued the bonding and that the agreement would render the DeBusks personally liable should any losses result under the bonds. He further testified that he witnessed both David and Sharen DeBusk sign the agreement and return it to him. According to Hedrick, neither of the DeBusks objected to signing the agreement, nor did they question him about it at any time.

In contrast, DeBusk testified that he was not present when the Indemnity Agreement was executed on September 3, 1999, that instead he was in Nashville working on air conditioning equipment at the State Capitol on behalf of Southern Mechanical. DeBusk was first apprised of the Indemnity Agreement, and his signature on it when he received notice of the lawsuit in the mail. Therefore, according to DeBusk, Hedrick never explained the personal liability under the Indemnity Agreement.

DeBusk was aware that Southern Mechanical was obtaining bonds from St. Paul through Hedrick for certain construction jobs. Upon his return from Nashville, DeBusk learned from his wife that she had gone to Hedrick's office to pick up some bonds and that Hedrick asked her to sign some papers. DeBusk testified that he was familiar with bonds and indemnity agreements so he asked his wife to obtain copies of any documents she had signed.

6

Mrs. DeBusk did not do so, however, and DeBusk never remembered to get copies thereafter and continued to work on the projects for which bonding had been obtained from St. Paul through Hedrick.

DeBusk testified that he did not meet with insurance representatives in Hedrick's office until two years after the Indemnity Agreement was signed. He explained that Southern Mechanical was trying to obtain a bond for a new project, so he was asked to go over the scope of the job. When he was not able to provide collateral for the new job, DeBusk was denied the additional bond.

Before his involvement with Southern Mechanical, DeBusk was an officer of and had an ownership interest in Union Controls, Inc. ("Union Controls"), a company which worked with environmental control systems. In connection with this business, DeBusk had experience executing indemnity agreements and providing personal liability. For instance, DeBusk signed an indemnity agreement dated January 5, 1996 for National Grange Mutual Insurance Company [*see* Ex. 2 to Doc. 44],[5] as well as an indemnity agreement benefiting Washington International Insurance Company in 1992 [*see* Ex. 6 to Doc. 44]. In fact, Hedrick testified that he assisted DeBusk with the National Grange indemnity agreement and advised DeBusk of his personal liability to the surety in the event of loss under the bonds when they met in 1996.

---

[5] Counsel for DeBusk raised a relevancy objection to the Indemnity Agreement for National Grange being introduced into evidence. The Court overruled the objection at the time of trial but stated it would determine the appropriate weight to be given to the document post-trial. The Court considers this document to be relevant to DeBusk's familiarity with the construction industry and the requirement of executing indemnity agreements, including a personal indemnity clause, in order to secure bonding for certain projects.

7

Case 3:02-cv-00137   Document 47   Filed 09/30/05   Page 7 of 14   PageID #: 37

Sharen DeBusk testified that she was the secretary of Southern Mechanical and was authorized to sign documents and checks on behalf of the company in that capacity.[6] She testified that her father-in-law Charles DeBusk asked her to pick up some bonds at Hedrick's office. She had never been to Hedrick's office prior to that time. While she was there, Hedrick asked her to sign her and her husband's names to the Indemnity Agreement, as DeBusk's presence in Nashville would delay conveyance of the bonding. According to Mrs. DeBusk, Hedrick specifically asked her to sign her husband's name to look similar to his own signature. Mrs. DeBusk testified that Hedrick told her the document needed to be signed in order to obtain some bonding but did not relate the contents of the document and did not explain that signing the document would make her personally liable to the insurance company. She also testified that her husband had never authorized her to sign his name to a document holding him personally liable.

Mrs. DeBusk did not read the document before she signed it for herself, her husband, and the corporation, and Hedrick did not give her copies of the document at that time or send them later. Mrs. DeBusk confirmed her husband's testimony that he asked her to obtain copies of any signed documents from Hedrick. She later asked Hedrick for copies, but he told her the document had already been sent to Nashville and he did not retain any copies. Thereafter, neither she nor DeBusk attempted to acquire a copy of the Indemnity Agreement. Like DeBusk, she also testified that she did not meet with insurance representatives about

---

[6] For the record, the Indemnity Agreement reflects that Sharen DeBusk had the title of president of Southern Mechanical and David DeBusk's title is not evident [*see* Ex. 1 to Doc. 44]. However, a different document reflects that David DeBusk was president of Southern Mechanical [*see* Ex. 3 to Doc. 44].

8

bonding in Hedrick's office until one or two years after the Indemnity Agreement was signed.

After hearing the testimony at trial, carefully reviewing the exhibits introduced into evidence, and considering the parties' proposed findings of fact and conclusions of law, the Court will set out its conclusions of law.

## **Conclusions of Law**

The central issue for determination is whether David DeBusk can be bound by the Indemnity Agreement. In reaching this decision, the Court must first determine whether a valid contract exists between FGIC and DeBusk. In doing so, the Court finds itself in the unique position of concluding that neither witness who testified regarding the execution of the Indemnity Agreement was credible as to key, relevant facts. As will be demonstrated, the Indemnity Agreement belies either version of how it was executed. Accordingly, the Court finds that FGIC has failed to meet its burden of proof that DeBusk is bound by the Indemnity Agreement.

Under Tennessee law, the "cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.* 521 S.W.2d 578, 580 (Tenn. 1975). The intention of the parties can be determined "by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the

9

construction placed on the agreement by the parties in carrying out its terms." *Penske Truck Leasing Co. v. Huddleston*, 795 S.W.2d 669, 671 (Tenn. 1990).

Courts have a duty to enforce contracts according to their plain terms. *Bob Pearsall Motors,* 521 S.W.2d at 580. It is well settled that "a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another." *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985). Contracts are generally construed by the courts to give meaning to all words in their ordinary and natural sense. *Evco Corp. v. Ross*, 528 S.W.2d 20, 23 (Tenn. 1975).

In Tennessee, there is no case law to suggest that indemnity agreements would be read any differently than regular contracts, and therefore indemnity agreements should be applied according to their terms. *Lyndon Property Ins. Co. v. Houston Barnes, Inc.*, No. 3:04-CV-174, 2005 WL 1840254, *4 (E.D. Tenn. July 26, 2005). When seeking indemnification pursuant to a contract, "there must be a clear and unequivocal expression of intention to indemnify." *First Am. Bank of Nashville v. Woods*, 734 S.W.2d 622, 632 (Tenn. Ct. App. 1987).

Against this legal backdrop and in light of the testimony at trial, the Court must conclude that a valid indemnity contract does not exist between FGIC and DeBusk. There is simply no evidence in the record of a clear and unequivocal expression of intention by DeBusk to indemnify FGIC for the bonds issued to Southern Mechanical. The Indemnity Agreement, which was introduced into evidence without objection, is the best evidence of

its execution on September 3, 1999 and defies the explanations given by Hedrick and Sharen DeBusk.

Hedrick testified that he arranged for the DeBusks to meet with representatives of St. Paul on several occasions in his office in order to obtain bonding for Southern Mechanical; that he explained to the DeBusks at some point that St. Paul required execution of the Indemnity Agreement before it issued the bonding and that the agreement would render the DeBusks personally liable should any losses result under the bonds; and that he personally witnessed both David and Sharen DeBusk sign the Indemnity Agreement in his office and that they never objected to or questioned him about the agreement.

In contrast, DeBusk testified that he was working in Nashville at the time the Indemnity Agreement was executed and that he learned upon his return that his wife had gone to Hedrick's office to pick up some bonds and that Hedrick had asked her to sign some papers. In fact, Sharen DeBusk testified that she went to Hedrick's office for the first time at the behest of her father-in-law to pick up some bonds; that while there she signed her and her husband's names to the Indemnity Agreement at the request of Hedrick, who specifically asked her to sign her husband's name to look similar to his own signature; that Hedrick did not explain that signing the document would make her personally liable to the insurance company; that her husband had never authorized her to sign his name to a document holding him personally liable; that she did not read the document before she signed it for herself, her husband, and the corporation; and that Hedrick did not give her copies of the document at that time or send them later upon her request.

11

The Court has carefully examined the Indemnity Agreement and notes that it is a typed document that reflects the handwritten signatures of three individuals, Freddie G. Kinzalow, Sharen DeBusk, and David DeBusk. According to the agreement, a quorum of the board of directors of Southern Mechanical met on September 3, 1999 and unanimously approved the Indemnity Agreement executed by Kinzalow and Sharen DeBusk. Kinzalow signed the fifth and sixth pages in his capacity as secretary of Southern Mechanical. Sharen DeBusk signed the fifth page as a corporate indemnitor in her capacity as president of Southern Mechanical, and she signed in her individual capacity on the seventh page. Interestingly, she testified that she signed the agreement in her capacity as secretary for the business. David DeBusk's purported signature appears on the seventh page as an individual indemnitor.

Neither party, however, offered evidence to explain the role of Freddie G. Kinzalow in signing the Indemnity Agreement or the meeting of the Southern Mechanical board of directors at which a quorum voted unanimously to approve the Indemnity Agreement. Moreover, neither party introduced evidence as to whether DeBusk attended the meeting and constituted part of the quorum. It is obvious that the Indemnity Agreement was prepared in advance of the meeting, as the pages set out above were tailored with the names, titles, addresses, social security numbers, and tax identification number of the various signatories. The language of the Indemnity Agreement illuminates how it was executed, and therefore the Court must find the testimony of Hedrick and Sharen DeBusk as to its execution inherently untrustworthy.

12

The Indemnity Agreement belies Hedrick's version that both David and Sharen DeBusk signed the agreement in his presence and belies Mrs. DeBusk's version that she appeared at Hedrick's office for the first time and signed her and her husband's names as secretary of the business. Handwriting experts would have perhaps shed further light on a comparison of the signatures on the various indemnity agreements introduced into evidence to determine whether DeBusk personally signed his name to the Indemnity Agreement on September 3, 1999 [*compare* Exs. 1, 2, 6 to Doc. 44]. However, neither party offered such expert testimony. Based upon the current state of the record, the Court cannot conclude that DeBusk actually signed his name to the Indemnity Agreement.

Any obligation by DeBusk to indemnify FGIC can only rest upon the Indemnity Agreement. Since there is no evidence that DeBusk clearly and unequivocally intended to indemnify FGIC, DeBusk is not bound by the Indemnity Agreement. In reaching this determination, the Court must reject FGIC's argument that even if DeBusk did not execute the Indemnity Agreement he nevertheless ratified it through his conduct. Ratification of an unauthorized contract is valid and binding only if the principal has "full knowledge, at the time of ratification, of all material facts and circumstances relative to the unauthorized act or transaction." *Webber v. State Farm Mut. Auto Ins. Co.,* 49 S.W.3d 265, 270 (Tenn. 2001) (citation omitted). The issue of ratification is generally regarded as a question of fact to be determined from all of the surrounding circumstances, including consideration of the principal's intent. *Id.* While DeBusk is not entirely blameless since he failed to follow up with Hedrick after learning that his wife had signed some documents on behalf of the

13

business of which he was an officer and owner and continued to work under the bonds, the Court cannot conclude from the present record that DeBusk had full knowledge of all material facts and circumstances related to the execution of the Indemnity Agreement.

## **Conclusion**

For the reasons stated herein, the Court concludes that David DeBusk is not bound by the Indemnity Agreement executed on September 3, 1999. Accordingly, FGIC is not entitled to recover any funds, attorney's fees, or litigation expenses and its complaint will be dismissed with prejudice.

Enter judgment accordingly.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE